## IN THE UNITED STATED DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

A. SHAW, an individual; and L. SHAW and
M. SHAW, individually and as Guardians.

           **Plaintiffs,**

**vs.**                                        **Case No.** CIV-21-1124-J

CITY OF NORMAN,
a municipal corporation, and
OFC. LAUDERBACK, an individual, and;
OFC. BRAKAGE, an individual, and
OFC. J. DOES 1 thru 4, individuals, and;
JIMMY HINSON, an individual; and
CHRISTINA HINSON, an individual.

           **Defendants.**

## COMPLAINT

**COMES NOW** the Plaintiffs, by and through their counsel, David J. Batton, and for their causes of action against Defendants state as follows:

## INTRODUCTION

1.  This is a damage claim action against Defendants for injuries caused by Defendants as well as violations of Plaintiffs' constitutional rights by Defendant City and or individual officers acting under color of law with a deliberant indifference to the safety of Plaintiff or others.

2.  On January 22, 2018, at approximately 9:00 a.m. an active school day for children under the age of 18 years old. Defendants approved, condoned and encouraged the individual officers with deliberate indifference to the welfare or safety of the innocent bystanders to pursue Defendant Hinson for minor traffic infraction through three school

zones and excessive high speeds. A. Shaw, was seriously and permanently injured as a direct result of the actions of the Norman Police Department policies and supervision and actions of Defendant Officers and City policies allowing reckless operations of patrol vehicles. The individually involved police officers attempted to initiate a traffic stop at Huntington Way and Wylie a known school zone. The officers including Defendant M. Lauderback after being able to stop the vehicle driven by Defendant Jimmy Hinson for minor traffic violations, allowed the vehicle to vehicle to leave and the officers immediately chased the vehicle at high speeds through three school zones only for minor traffic violations until it collided with Plaintiff M. Shaw, a student at the University of Oklahoma causing severe permanent debilitating injuries, several miles away.

## JURISDICTION AND VENUE

1.  This court has subject matter jurisdiction of these claims pursuant to its original jurisdiction, federal question pursuant to 28 U.S.C. §1331 over Plaintiff's claim under the Civil Rights Act, 42 U.S.C. § 1983 et seq; The Constitution of the State of Oklahoma as well the 4th and 14th Amendments to the Constitution the United States.

2.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367 because said claims arise from the same case or controversy – the crash that permanently injured Plaintiff– as Plaintiff's §1983 claims, which is within this court's original jurisdiction under Article III of the United States Constitution.

3.  The amount in controversy exceeds $175,000, exclusive of costs and interest.

4.   Venue is proper in the Western District as the parties reside and or the events giving rise to the Plaintiffs' claims occurred in Western District of Oklahoma, pursuant to 29 U.S.C. §1391.

5.   Notice of the instant tort claim(s) was timely provided pursuant to the requirements of the Oklahoma Government Torts Claim Act (GTCA). The Defendant City has not provided written notice of approval or denial of the claim(s), and more than 90 days have elapsed prior to filing this action was timely filed within the statutory limit.

6.   This matter was originally filed in Cleveland County district court and was dismissed without prejudice on or about November 12, 2021 without prejudice to refiling. Pursuant to the Oklahoma savings statute 12 O.S. §100 it has been refiled within one (1) year, therefore the claim is considered ripe for filing.

## PARTIES

7.   Plaintiffs, A. Shaw, M. Shaw, and L. Shaw all are residents of Moore, Cleveland County, Oklahoma.

8.   Plaintiffs, M. Shaw, is the father and Co- Guardian of A. Shaw; and L. Shaw, is the mother and Co-Guardian of A. Shaw pursuant to Cleveland County case number PG-18-223.

9.   Defendant Norman, an Oklahoma Municipal corporation, (hereinafter "City") is a city and municipality organized under the laws of the State of Oklahoma. The City is responsible for the policies, practices and customs of its Police Department and is responsible for the oversight, supervision, training and disciplining of the City's police officers.

10. Defendants, officer M. Lauderback, and officer Brakage, and officers Does 1 thru 4 all are a police officers employed by the City of Norman Police Department and engaged in the conduct complained of in the course and scope of their employment with the City of Norman. At the times material to this complaint,  the Officers  were duly appointed agents authorized to enforce the laws of the City of Norman, and the State of Oklahoma and acted under the color of law  at all times relevant to this action.  The officers are also sued in their individual capacities.

11. Defendant, Jimmy Hinson  is sued in his individual capacity as the driver of the pickup truck he was operating at the time of the collision. Christina Hinson and or other was the owner of the pickup truck and or had possession of the vehicle and provided vehicle such to Jimmy Hinson knowing or having reason to know that he was not a licensed driver.

**FACTS**

12.  The individually involved police officers attempted to initiate a traffic stop at Huntington Way and Wylie. The officers (Michael Lauderback) were unable able initially to stop the vehicle Defendant Hinson was operating until it entered an active school zone on Berry Road at Main Street. Although Defendant did not initially stop he did not increase his speed or take evasive maneuvers to escape the seizure initiated by Defendant police officers acting on behalf of the City.

13. The Defendant officers although having seized both the vehicle and Defendant Hinson did not take any further precautionary measures after or while the vehicle was

4

stopped in an active school zone with minor children in the area including and not limited to having the driver step out of the vehicle.

14. Defendant Lauderback had reasonable suspicion that Defendant Hinson not having any evidence driving privileges made statement giving rise to Defendant he would need to flee, or face being arrested.

15. Defendant Jimmy D. Hinson (hereinafter "driver") was allowed to remain in full operational control of the vehicle even though the officers believed or had reason to believe there was a likelihood that the driver would flee. Defendant Lauderback knowing or having reason to know that the driver posed a potential driving hazard left the driver the complete ability to control the vehicle he was while officers went to their patrol unit to write a traffic ticket.

16. Defendant Hinson, as was foreseeable to any experienced officer, seized the lax atmosphere created by Defendant Lauderback to flee North bound on Berry Road through other well-known and marked school zones.

17. Defendant Hinson's vehicle was a very large and heavy pick-up truck with a known gross weight that the officers knew would cause significant damage in any traffic accident, that would not be able to stop suddenly or properly maneuver. Defendant Hinson's vehicle was known to Defendants to have such a weight that it would be difficult to stop and capable of causing extreme damages.

18. Defendant Lauderback knew that Defendant Hinson was in an active school zoon and headed into another active school zone and residential area and that likelihood of

serious injuries to others if Defendant Lauderback and the City elected to conduct a high-speed pursuit through active school zones.

19. Defendant officers continued the pursuit knowing that Defendant Hinson was attempting to flee intentionally creating danger to others by his actions of avoiding pursuit. No valid reason existed to maintain such reckless and dangerous pursuit. Defendant Lauderback assisted by other Defendant officers, throughout the pursuit, knew or only had reason to know the driver had committed simple minor traffic violations.

20. Defendant Hinson continued on various paths known to Defendant Lauderback that would likely lead to serious injuries to others if officers maintained their pursuit for only minor traffic violations.

21. The officers were initially advised to terminate the pursuit in sufficient time to avoid injuries to others by the supervisor Defendant Doe 1 on duty. Defendant Lauderback chose to believe that the policies and procedures established by the City of Norman, allowed officers to disregard their creation of danger to others and not themselves and continued the pursuit into two or three active school zones and high traffic area.

22. Defendant had sufficient Lauderback opportunity to deliberate about the decision to pursue the large pickup truck as the truck w. In fact, Defendant Lauderback was able to consult by radio with his supervisor with the Norman Police Department about continuing the deadly action.

23. As a direct result of the officers' conduct, Defendant Hinson seeing the officers were still in pursuit attempted to flee through more school zones creating increased

danger to bystanders by increasing his speed and maneuvers designed to elude being subject to being seized.

24. Defendant Officers and City were well aware that at increased speeds the officers and Defendant Hinson's reaction time to sudden emergencies was impaired and it was almost impossible to timely react to various unknown scenarios that would be encountered by driving at excessive speeds.

25. Even though the distance increased between the Defendant Officers and Defendant Hinson, they continued their high-speed pursuit well behind Defendant Hinson where their emergency equipment would not have an ability to alert the unsuspecting public of their decision to maintain a high-speed pursuit for minor traffic violations.

26. Defendant Hinson traveling at an excessive speed watching the officers well in the rear entered an intersection against the red light striking several vehicles with his large heavy truck. As a result, Plaintiffs have suffered permanent and debilitating injuries from the actions of the officers in maintaining a pursuit for simple traffic violations.

27. Since the accident, knowing or having reason to know of the numerous persons that were injured as a result of the pursuit, employees of the City of Norman and or Police Department have been less than cordial and have failed refused or neglected to provide any pertinent details of the incident and have utilized their positions under color of law to gain access to Claimant by show of authority without permission in an attempt to seize Claimants property and or gain access to Claimant while he was in critical care out of the jurisdiction of the officers.

28. The use of non-physical force under color of law was not authorized and inappropriate in this situation and officers elected to intentionally create dangerous conditions by continuing a pursuit that they knew or had reason to know would result in death or serious injuries to others and with deliberate indifference continued to pursue for simple traffic infractions.

29. Plaintiff A. Shaw has suffered lifelong debilitating injuries as a result of Defendants' conduct. Plaintiffs L. Shaw and M. Shaw have suffered individual damages and emotional distress and are responsible for the continued care for A. Shaw.

30. The actions of each of the police Defendants were undertaken deliberately/recklessly, and with knowledge that there was a high degree of probability of harm and with reckless indifference to the consequences, including death, which were likely and did occur.

31. The actions of each of the police Defendants were undertaken deliberately and with the knowledge that they were violating all standard "police pursuit" procedures and policies in effect at that time.

32. All police Defendants created a policy or custom of deliberate indifference, negligence and recklessness in the training, hiring and supervision of personnel, including officers who would engage in the improper, illegal and unnecessary "police pursuits".

33. All police Defendants created a policy or custom of deliberate indifference, negligence and recklessness in the training, hiring and supervision of personnel in the enforcement of the use of "police pursuit" provisions/guidelines.

34. All Defendants created a policy or custom of deliberate indifference, negligence and recklessness in the training, hiring and supervision of personnel, including officers, in the proper procedure for initiating and continuing in "police pursuit".

35. The acts/omissions of all Defendants and through their duly authorized agents, servants, workers, employees and/or representatives were committed negligently, recklessly, carelessly, wantonly, maliciously, unlawfully, and unconstitutionally, and by conduct so egregious so as to shock the conscious and all sense of decency.

36. The acts and/or omissions to act of all Defendants and through their duly authorized agents, servants, workers, employees and/or representatives were committed without due regard and with wanton and reckless disregard to the health, safety and welfare of Plaintiffs.

37. Defendants, individually and by and through their duly authorized agents, servants, workmen, employees, and/or representatives, knew or should have known that they were violating the constitutional rights of Plaintiffs including their right to freedom from: state created danger, deliberate indifference to their safety; and violations of the right to life secured to Plaintiffs by the provisions of the Constitution, including the Fourteenth Amendment of the Constitution of the United States and by 42 U.S.C. §1983.

**Count 1**
**42 U.S.C. § 1983 Claim for Excessive Force and denial of Due Process**

38. Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if they were fully set out in this Count.

39. Individual officer deprived of their Fourth Amendment rights may seek redress under 42 U.S.C. § 1983. Section 1983 provides a cause of action against any "person"

who deprives an individual of federally guaranteed rights "under color" of state law. See, 42 U.S.C. § 1983. Plaintiffs had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience.

40. The improper actions of the Defendant Officers as alleged in this Petition which resulted in the injuries without just cause violated Plaintiffs rights under the Fourth Amendment to the United States Constitution to be secure in their persons against unreasonable force and or intentional danger created by their actions, and their rights to due process under the Fourteenth Amendment to the United States Constitution.

41. The actions of the Defendant Officers as alleged in this Petition were done intentionally, maliciously, wantonly, or oppressively, and or deliberately indifferent with the intent to cause injury to the Plaintiffs or in reckless disregard of the probability that they would cause injury to the Plaintiffs.

42. The actions of the Defendant Officers as alleged in this Petition were the direct and proximate cause of the constitutional violations set forth above and of the Plaintiffs' injuries.

43. The aforementioned actions of Defendant Lauderback shocks the conscience in that he acted with deliberate indifference and/or reckless disregard in one or more of the following respects:

   a. Unnecessarily attempted to stop a driver fleeing from a ticket to write a ticket for a non-emergency traffic stop by driving at high rates of speed chasing the driver through active school zones and residential areas at approximately 9:00 a.m., using emergency sirens or lights knowing the driver was not going to stop and no reason existed for chasing the driver through intersections without assuring it was safe to do so;

b. Willingly caused the driver to operate his vehicle at excessive speeds at approximately 9:00 a.m. through active school zones and on residential streets for simple traffic violations.

c. Willingly operated his vehicle through school zones and through intersections without slowing down causing the driver to increase his speed to escape from the officers.

d. Willingly operated his vehicle in a manner to cause the driver to continue through school zones and residential areas and intersections without looking for oncoming traffic or ability to give notice to other motorists.

e. Willingly operated his vehicle at excessive speeds forcing the driver to flee through an intersection against a red light.

f. Willingly operated his vehicle at excessive speeds without terminating the dangerous pursuit forcing the driver through an intersection without slowing down, despite having reason to know the driver was not going to stop unless forced.

g. Willingly and intentionally placed the public at risk as those like Plaintiff are subject to being unsuspecting tools to slow down a fleeing driver that is not using emergency equipment.

h. Willingly violated traffic laws, including but not limited to the speed limit, when responding to the driver's decision to remain in presence of the officer.

i. Willingly failed to continuously operate the emergency vehicle lighting and sirens required by law to adequately warn the public of a pursuit.

j. Willingly failed to continuously operate the emergency vehicle lighting and sirens required by law to prevent harm or damages to others on the roadway.

k. Willingly initiated an emergency response where there existed an unnecessary risk to persons and property and refused to discontinue such when he knew that he was creating a dangerous situation to others.

l. Willingly responded to a non-emergency situation by continuing a chase where other multiple units were available to respond.

44. Defendant Officers are not entitled to qualified immunity for the complained

conduct.

**Count 2**
**42 U.S.C. § 1983 Monell Claim**

45. Plaintiffs repeat and re-allege the preceding paragraphs of this Petition as if they were fully set out in this Count.

46. The actions of the Defendant Officers as alleged in this Petition were done under the authority of one or more interrelated de facto policies, practices and/or customs of the City of Norman.

47. The actions of the Defendant Officers as alleged in this Petition were part and parcel of a widespread municipal policy, practice and custom which is further established by the involvement in, and ratification of, these actions by municipal supervisors and policy makers, as well as by a wide range of police officials.

48. Norman police officers are governed by Norman Police Department policies and regulations.

**Norman Police Department Policies**

49. Norman Police Department Policy addresses how Norman Police Department Officers are to handle pursuits especially regarding school zones for minor traffic violations.

50. Norman Police Department Policy upon information and belief was aware that there are numerous incidents high speed pursuit situations over the last several years. In the context of appropriate responses and or use of force, none were known to be made public to be in violation of department policy.

51. The rubberstamping of police responses and or use of force against innocent bystanders injured as a result of the chase policy shows a pattern and practice of

condoning the liberal use of force and or inappropriate police encounter involving pursuits. The City's written policy regarding responses to pursuits and or use of force against such and the deliberate indifference to innocent bystanders is unconstitutional on its face.

52. The policy is believed to be confusing, ambiguous, and permits the officers to choose any response including unbridled use of force in situations and under circumstances that are completely at odds with dealing with the persons involved with minor traffic offenses and not appropriate with the Fourth Amendment standard of "objective reasonableness," as articulated by the United States Supreme Court and or the Constitution of the State of Oklahoma.

53. The City has purportedly established a pursuit to resolve crisis incidents to avoid danger and harm to the public including Plaintiffs. However, such policy was disregarded and allowed the responding officers to take whatever action they chose including unnecessary use of deadly force through multiple active school zones.

54. Upon information and belief, the City also has a Communications division that does not appear to be trained or recognizing incidents high speed pursuits and no Supervisor elected to enforce the policy especially for a simple traffic violation.

55. No procedures were followed that were designed to provide for protections of the public when the vehicle was originally stopped and officers did not take action to ensure the vehicle would not be secured during the original condition of custody.

56. Rather than attempting to deescalate the situation, the policy of the City allowed the officers to elevate the encounter by chasing rather than disengaging, No assistance

was sought to secure the vehicle during the traffic stop and others were not engaged until chased by the responding officers in an inappropriate manner.

57. The City policy allowed, and the officers responded in a manner designed for the immediate apprehension by use of force regardless of danger being created by chasing a vehicle at high speeds for minor traffic violations.

58. City failed to properly train or supervise its officers and supervisors regarding pursuits for traffic violations:

   a. Safe operation of Police Department vehicles at high speeds in school zones and streets during the day;

   b. When is it appropriate or necessary to operate Police Department vehicles at high speeds in school zones or residential areas.

   c. When is it appropriate to discontinue a pursuit for minor traffic violations.

   d. When is it appropriate to secure the driver of a vehicle while checking on driver's license or records.

   e. When to recognize a pursuit for minor traffic violations is dangerous and should not be continued.

   f. When should a supervisor manage pursuits and terminate the decision of the individual patrol officer.

**Norman Police Department Use Force and Pursuit Policy**

59. Norman Police Department Policy governs the use of force and danger created to innocent bystanders.

60. In the context of deadly use of force, upon information and belief, there were numerous incidents of deadly force and pursuits over the last several years. None were known to be made public to be in violation of department policy. The rubberstamping of

police uses of force, especially deadly use of force, shows a pattern and practice of condoning the liberal use of deadly force that is authorized from the top-down.

61. The City's written use of force policy regarding the use of deadly force and pursuits is unconstitutional on its face. The policy is confusing, ambiguous, and permits the use of deadly force in situations and under circumstances that are completely at odds with the Fourth Amendment standard of "objective reasonableness," as articulated by the United States Supreme Court.

62. The City's written use of deadly force and pursuit policy reads in pertinent part, "Deadly force may be used if the officer has probable cause to believe that the suspect poses an imminent threat of serious physical harm…"

63. The City's written use of deadly force policy does not require the officer to consider the "totality of the circumstances." The term "totality of the circumstances" is not used anywhere in City's use of deadly force policy, and the policy does not account for specific factors deemed relevant by the Tenth Circuit.

64. The City's written use of deadly force and pursuit policy does not require City's officers to use the required objectively reasonable standard. Instead, City's policy permits, if not invites, City's officers to use deadly force and to pursue anytime an officer subjectively believes that force is necessary and to pursue such persons through the streets of the City with reckless abandon, even where the objective officer would not.

65. The City's written use of deadly force and pursuit policy actually authorizes deadly force or pursuit in circumstances where deadly force or pursuit is prohibited by the Fourth Amendment.

66. At all times material to the allegations contained in this complaint, the interrelated de facto policies, practices, and customs of Norman, among other things described in the preceding paragraphs of this complaint, led to:

   a.   Improperly initiating a police pursuit of a summary traffic offender;

   b.   The failure to properly train officers to properly handle a high-speed pursuit or when to terminate such and continue at high unsafe speeds.

   c.   The failure to properly train officers to use de-escalation or termination techniques before resort to the use of lethal force in a pursuit situation;

   d.   The encouragement of excessive and unreasonable force at high speeds with reckless abandon knowing such would place civilians in situations involving a potential death or serious injury;

   e.   The failure to properly train and supervise officers with regard to using their vehicles at high speeds thus creating extremely dangerous situations to the public over a minor traffic violation using their vehicles as weapons in complete disregard to civilians subjected to a potential crash.

67. The policies, practices and/or customs and their failures as alleged in this Complaint, separately and together, are the proximate cause of the injury to Plaintiffs, upon information and belief, the City does not provide.

   a.   No recurrent training exists for de-escalation techniques regarding pursuits.

   b.   No training regarding the impact of chasing various vehicles and or their stability and force comparing weight and size along with speed.

   c.   Prior to January 2018, the City's training policies were inadequate to train officers to handle the necessity of pursuits for minor traffic violations.

   d.   Prior to January 2018, the City's policy regarding traffic stops in school zones did not account for initiating a pursuit.

   e.   No training regarding the ability to recognize the conduct of the driver being pursued for minor traffic violations as dangerous to others.

      f.   No training regarding ability of bystanders to understand the nature of a high-speed pursuit.

68. The interrelated policies, practices and customs, as alleged in this Complaint, individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendant Officers to commit the acts alleged in this Complaint against Plaintiffs; those policies, practices and customs, therefore, are the direct and proximate causes of the injuries to Plaintiffs.

69. By insulating Defendant Officers from the consequences of their misconduct, the policies, practices and customs alleged in this Complaint encouraged the lack of training, supervision, and in appropriate conduct by Defendant Officers which resulted in the unlawful injuries to Plaintiffs. These policies, practices and customs, therefore, are the moving forces behind, and the direct and proximate causes of, the unconstitutional acts committed by the Defendant Officers in this case and the injuries to Plaintiffs.

70. There is no reasonable justification why Defendant Officers as well as other City officers have not been well-trained on the points above because:

      a.   It is well-known that City's officers are authorized and expected to approach and apprehend citizens on a regular basis;

      b.  It is well-known that City's officers often encounter individuals that may fear being arrested even for minor traffic violations

      c.  It is well-known that City's officers need better training and resources to deal with minor traffic encounters and elect to treat each as a felony encounter and decide to chase even if a minor traffic violation.

      d.  It is well-known that City has a history of above average rates of  excessive force complaints and high-speed pursuits.

**Count 3**
**Fourteenth Amendment Equal Protection Violation**
**42 U.S.C. § 1983**

71. Plaintiffs restate and incorporate previous paragraphs as if set forth fully herein.

72. The Plaintiffs had a right to Equal Protection under the law, and the City violated their rights by failing its duty to properly train and supervise City's officers, and by maintaining or tolerating a policy, practice, custom, or culture that causes intentional disparate enforcement and indiscriminate creation of dangerous conditions during force used to purpose persons for minor traffic violations. These failures by the City constitute a violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

73. As a direct and proximate cause of the acts and omissions detailed above, the officers knowing they were chasing the vehicle through several active school zone areas. Defendants are not entitled to qualified immunity for the complained conduct.

**Count 4**
**Negligence GTCA (City of Norman)**

74. Plaintiffs restate and incorporate previous paragraphs as if set forth fully herein.

75. Defendant City and its officers owed a duty to Plaintiffs to operate the vehicle driven in a safe and reasonable manner under the circumstances, which duty he breached by engaging in the negligent acts and omissions set forth herein.

76. Defendant City by and through its officers engaged in a high-speed chase of a minor traffic offender in careless and reckless disregard for the rights of Plaintiffs with deliberate indifference.

77. As a direct and proximate result of the aforesaid acts of negligence of Defendant City, Plaintiffs suffered, and the Defendant City (not individual officers) is liable for, the following damages:

78. Plaintiffs' pain and suffering.

79. Plaintiff A. Shaw loss of future earnings and earning potential.

80. Plaintiffs' permanent loss of enjoyment of life.

81. Plaintiffs' having increased costs of maintenance and other damages.

82. Plaintiff has permanent injuries that cannot be ameliorated over time. Defendant City is responsible for the damages regarding the torts of its officers.

## Count 5
### Negligence as to Defendants Jimmy and Christina Hinson

83. Plaintiffs restate and incorporate previous paragraphs as if set forth fully herein.

84. Defendant Jimmy Hinson intentionally operated his motor vehicle in an extremely and hazardous manner knowing or having reason to know that his conduct would result in injury to others.

85. Defendant Jimmy Hinson was continually distracted and solely paying attention to the Defendant officers well behind him while he attempted to flee from the officers. Defendant Jimmy Hinson well exceeded all the safe speed limits and drove in a reckless manner to facilitate his escape from the officers in pursuit.

86. Defendant while watching the chasing officers while driving at excessive speeds drove through an intersection against the red light and crashed into Plaintiff's vehicle.

87. Defendant Christina Hinson knowing or having reason to know that Defendant Jimmy Hinson was not supposed to be driving and or would drive at excessive speeds provided him with the truck entrusted him with the operations of the vehicle.

88. The conduct of Defendants Christina and Jimmy Hinson was intentional and deliberate and warrant the imposition of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for damages in an amount to be determined at trial on each count, exclusive of interest, costs and attorney fees, including punitive damages against the individual officers, attorney fees and costs pursuant to 42 U.S.C. §1988 for each of the applicable claims, pre- and post-judgment interest on any damages awarded at the statutory rate, and for other and such further relief as the Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff respectfully requests that this matter be tried to a jury on all of the claims and or future amended claims against the Defendants.

**Respectfully Submitted,**

**   /s/ David J. Batton         **
**DAVID J. BATTON, OBA #11750**
**Law Office of David J. Batton**
**P.O. Box 1285**
**(330 W. Gray, Suite 304)**
**Norman, Oklahoma   73070**
**Tele: (405) 310-3432**
**Fax : (405) 310-2646**
**dave@dbattonlaw.com**
**battonlaw@coxinet.net**