# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| A. SHAW, an individual; and L. SHAW and M. SHAW, individually and as Guardians,<br><br>     Plaintiffs,<br><br>-vs.-<br><br>CITY OF NORMAN, a municipal corporation, and OFC. LAUDERBACK, an individual, and; OFC. BRAKAGE, an individual, and OFC. J. DOES 1 thru 4, individuals, and; JIMMY HINSON, an individual; and CHRISTINA HENSON, an individual,<br><br>     Defendants. | Case No. CIV-21-1124-J |

---

## CITY OF NORMAN, MICHAEL LAUDERBACK, AND JASON BRAKHAGE'S MOTION TO DISMISS AND BRIEF IN SUPPORT

---

Rickey J. Knighton II, OBA No. 17257
Assistant City Attorney
Jeanne Snider, OBA No. 19223
Assistant City Attorney
Anthony Purinton, OBA No. 34276
P.O. Box 370
201 West Gray
Norman, Oklahoma 73070
Telephone:  (405) 217-7700
Facsimile:  (405) 366-5425
Email:  rick.knighton@normanok.gov
Email:  jeanne.snider@normanok.gov
Email:  anthony.purinton@normanok.gov

*Attorneys for City of Norman, Michael Lauderback, and Jason Brakhage*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ------------------------------------------------------------------- i

TABLE OF AUTHORITIES --------------------------------------------------------------- iii

MOTION TO DISMISS ------------------------------------------------------------------ 1

BRIEF IN SUPPORT -------------------------------------------------------------------- 2

INTRODUCTION ----------------------------------------------------------------------- 2

STANDARD OF REVIEW ---------------------------------------------------------------- 3

DISCUSSION --------------------------------------------------------------------------- 4

PROPOSITION I

THE INDIVIDUAL DEFENDANTS ARE EENTITLED TO
QUALIFIED IMMUNITY ---------------------------------------------------------------- 4

      A.     Plaintiffs' Complaint fails to state an excessive force
            claim under the Fourth Amendment ------------------------------------- 6

      B.     Plaintiffs' Complaint fails to state a due process claim
            under the Fourteenth Amendment ---------------------------------------- 7

      C.     Plaintiffs' Complaint fails to state an equal protection
            claim under the Fourteenth Amendment --------------------------------- 9

      D.     Plaintiffs L. Shaw and M. Shaw fail to state a § 1983
            claim against the Municipal Defendants -------------------------------- 10

      E.     The rights claimed by Plaintiffs are not clearly
            established------------------------------------------------------------------- 11

PROPOSITION II

PLAINTIFFS' COMPLAINT FAILS TO STATE A FEDERAL
CLAIM AGAINST THE CITY------------------------------------------------------------- 11

PROPOSITION III

THE GTCA SHIELDS THE CITY FROM LIABILITY FOR THE
LOSS CLAIMED BY PLAINTIFFS------------------------------------------------------- 13

CONCLUSION ----------------------------------------------------------------------------- 15

CERTIFICATE OF SERVICE------------------------------------------------------------- 16

## **TABLE OF AUTHORITIES**

### **Cases**

*Anderson v. Liberty Lobby, Inc*.,
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) --------------------------------- 3

*Anderson v. Creighton*,
483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) --------------------------------- 5

*Archuleta v. McShan*,
897 F.2d 495 (10th Cir. 1990) ----------------------------------------------------------- 10

*Baptiste v. J.C. Penney Co., Inc.*,
147 F.3d 1252 (10th Cir. 1998) ---------------------------------------------------------- 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)----------------------------- 3

*Breidenbach v. Bolish*,
126 F.3d 1288 (10th Cir. 1997)----------------------------------------------------------- 4

*California v. Hodari D.*,
499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)-------------------------------- 6

*City of Los Angeles v. Heller*,
475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) -------------------------------- 12

*County of Sacramento v. Lewis*,
523 U.S. 833, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) ---------------------------- 4, 6

*Ellis ex rel. Estate of Ellis v. Ogden City*,
589 F.3d 1099 (10th Cir. 2009)---------------------------------------------------------- 7, 12

*Estate of Ellis v. Ogden City*,
2008 WL 11424148 (D. Utah 2008)----------------------------------------------------- 9, 10, 12

*Graves v. Thomas*,
450 F.3d 1215 (10th Cir.2006)----------------------------------------------------------- 12

*Love v. Riverhead Cent. Sch. Dist.*,
823 F. Supp. 2d 193 (E.D.N.Y. 2011)-------------------------------------------------------- 10

*Medina v. City and County of Denver*,
960 F.2d 1493 (10th Cir. 1992) -------------------------------------------------------------- 5

*Monell v. New York*,
436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ------------------------------------- 2, 11

*Murrell v. School Dist. No. 1, Denver*,
186 F.3d 1238 (10th Cir. 1999) ------------------------------------------------------------- 5

*S.E.C. v. Shields*,
744 F.3d 633 (10th Cir. 2014) ------------------------------------------------------------- 3

*Trujillo v. Board of County Commissioners of County of Santa Fe*,
768 F.2d 1186 (10th Cir. 1985) ------------------------------------------------------------ 10

*United States v. Botero-Ospina*,
71 F.3d 783 (10th Cir. 1995) -------------------------------------------------------------- 6

*Vaughn v. City of Tulsa*,
1999 OK CIV APP 9, 974 P.2d 188----------------------------------------------------------- 13

## Statutes

42 U.S.C. § 1983 ----------------------------------------------------------------3, 6, 10, 11, 12

51 O.S. § 155 ----------------------------------------------------------------------------- 13, 14

## Rules

Federal Rule of Civil Procedure 12-------------------------------------------------------- 1,3, 4, 6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

A. SHAW, an individual; and L. SHAW and M. SHAW, individually and as Guardians,

      Plaintiffs,

-vs.-

CITY OF NORMAN, a municipal corporation, and OFC. LAUDERBACK, an individual, and; OFC. BRAKAGE, an individual, and OFC. J. DOES 1 thru 4, individuals, and; JIMMY HINSON, an individual; and CHRISTINA HENSON, an individual,

      Defendants.

Case No. CIV-21-1124-J

## CITY OF NORMAN, MICHAEL LAUDERBACK, AND JASON BRAKHAGE'S MOTION TO DISMISS AND BRIEF IN SUPPORT

**COMES NOW** Defendants City of Norman, Michael Lauderback, and Jason Brakhage[1] (respectively, City, Officer Lauderback, and Officer Brakhage, or collectively, Municipal Defendants), pursuant to Federal Rules of Civil Procedure (FRCP) 12(b)(6) and for their Motion to Dismiss would show this Court that Plaintiffs fail to state federal or

---

[1] It is assumed that Plaintiffs named Officer Jason Brakhage as a defendant – i.e., the City does not employ an Officer "Brakage."  However, it is not clear why Plaintiffs sued Officer Brakhage.  Officer Brakhage is not one of the officers who attempted to seize Defendant Jimmy Henson, *see* Compliant [Doc. Entry No. 1] at pg. 4, ¶ 12 (alleging that Defendant Lauderback was the "officers" who seized Defendant Jimmy Henson), and discovery will reveal that he was not involved in the high-speed chase.

state claims against the Municipal Defendants.  In support of this Motion, the Municipal Defendants submit the following Brief.

## **BRIEF IN SUPPORT**

## I.      INTRODUCTION

This action arises out of injuries alleged to have been sustained by Plaintiffs as a result of a high-speed chase initiated by Officer Lauderback.  Plaintiffs' Complaint alleges federal claims for excessive force under the Fourth Amendment to the United States Constitution and denial of due process under the Fourteenth Amendment to the United States Constitution, Complaint [Doc. Entry No. 1] at 9 (Count 1), equal protection under the Fourteenth Amendment to the United States Constitution, *id.* at 18 (Count 3), a claim against the City under *Monell v. New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), *id.* at 12 (Count 2), and a negligence claim, *id.* at 18 (Count 4).  The issues raised in this Brief are as follows:

1.      The Fourth Amendment covers "searches and seizures."  Under United States Supreme Court precedent, high-speed police pursuits resulting in injury or death do not involve "seizures" under the Fourth Amendment.  Does Plaintiffs' Complaint state an excessive force claim under the Fourth Amendment?

2.      Under United States Supreme Court and Tenth Circuit precedent, high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment.  The allegations set forth in Plaintiffs' Complaint do not support an inference that the individual Municipal Defendants intended to harm Defendant Jimmy Henson or worsen his legal plight.  Does Plaintiffs' Complaint state a due process claim under the Fourteenth Amendment?

3.      Plaintiffs' equal protection claim appears to be based on allegations regarding "intentional disparate enforcement" and "indiscriminate

creation of dangerous conditions during force used to purpose (sic) persons for minor traffic violations." The facts set forth in Plaintiffs' Complaint do not identify any similarly situated individuals who were treated differently or behavior of a governmental officer that shocks the contemporary conscience. Does Plaintiffs' Complaint state an equal protection claim under the Fourteenth Amendment?

4.   Plaintiffs L. Shaw and M. Shaw allege that they have suffered individual damages, emotional distress, and are responsible for the continued care of A. Shaw. It is a "well-settled principle that a section 1983 claim must be based upon the violation of [a] plaintiff's personal rights, and not the rights of someone else." Do Plaintiffs L. Shawn and M. Shaw state a § 1983 claim against the Municipal Defendants?

5.   Under federal law, liability against a municipality will not attach where there is no underlying constitutional violation by any of the municipality's officers. Plaintiffs fail to state constitutional claims against the individual Municipal Defendants. Does this failure require that Plaintiffs' constitutional claims against the City be dismissed?

6.   This case arises out of the individual Municipal Defendants' method of providing police or law enforcement protection. The City is shielded from liability for claims resulting from the method of providing police or law enforcement protection. Does Plaintiffs' Complaint state a claim against the City under Oklahoma law?

## II.   STANDARD OF REVIEW

When considering a motion to dismiss under FRCP 12(b)(6), the court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the non-moving party. *See S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014). To avoid dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).

### III.   DISCUSSION

### PROPOSITION I

### THE INDIVIDUAL MUNICIPAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

When qualified immunity is raised in a FRCP 12(b)(6) motion, the plaintiff must carry the burden of establishing that the defendant violated clearly established law. *Breidenbach v. Bolish*, 126 F.3d 1288, 1291 (10th Cir. 1997), *overruled on other grounds as recognized in Currier v. Doran*, 242 F.3d 905 (10th Cir. 2001).  Thus, the plaintiff must "identify a clearly established statutory or constitutional right of which a reasonable person would have known, and then allege facts to show that the defendant's conduct violated that right." *Id.*

The Tenth Circuit scrutinizes a dismissal on qualified immunity grounds using a two-step process. First, the court examines whether the plaintiff has met its burden of "coming forward with sufficient facts to show that the defendant's actions violated a federal constitutional or statutory right." *Baptiste v. J.C. Penney Co., Inc.*, 147 F.3d 1252, 1255 (10th Cir. 1998).  Only when the plaintiff has satisfied this initial inquiry does the court ask whether the right was clearly established at the time of the alleged conduct at issue. *Id.* at 1255 n. 6.  *See also County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a

court should ask whether the right allegedly implicated was clearly established at the time of the events in question.").

When making the second determination, deciding whether the right was clearly established at the critical time, the Tenth Circuit looks to see if there is "a Supreme Court or other Tenth Circuit decision on point," or whether the clearly established weight of authority from other circuits have found the law to be as the plaintiff maintains. *Murrell v. School Dist. No. 1, Denver*, 186 F.3d 1238, 1251 (10th Cir. 1999) (citations and internal quotation marks omitted). *See also Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). However, for a right to be "clearly established," there need not be binding precedent on "all fours" with the current case; instead, the unlawfulness must have been apparent in light of pre-existing precedent. As the Supreme Court held in *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987):

> The right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

In this case, Plaintiffs allege that the individual Municipal Defendants violated Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution. To survive the individual Municipal Defendants' motion to dismiss, Plaintiffs must, as an initial matter, allege enough facts to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level. If they are successful, the Court should consider whether the rule was clearly established at the time

in question.   Even when viewed charitably as required by FRCP 12(b)(6), Plaintiffs'
Complaint fails to allege enough facts to state a claim for relief that is plausible on its face
and raise a right to relief above the speculative level.

**A.**   **Plaintiffs' Complaint fails to state an excessive force claim under the Fourth Amendment.**

The Fourth Amendment covers "searches and seizures" and is relevant where a
seizure has occurred.  Under United States Supreme Court precedent, high-speed police
pursuits resulting in injury or death do not involve "seizures" under the Fourth
Amendment. *Lewis*, 523 U.S. at 844 (holding "that no Fourth Amendment seizure would
take place where a 'pursuing police car sought to stop the suspect only by the show of
authority represented by flashing lights and continuing pursuit,' but accidentally stopped
the suspect by crashing into him.") (internal quotation omitted); *California v. Hodari D.*,
499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (holding that a police pursuit
in attempting to seize a person does not amount to a "seizure" within the meaning of the
Fourth Amendment).

Here, Plaintiffs' injuries are the result of a "chase … at high speeds.  Complaint at
2.  While Defendant Jimmy Henson was initially the subject of a limited seizure, *see United
States v. Botero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995) (observing that an ordinary
traffic stop is a limited seizure that is more analogous to an investigative detention), it is
undisputed that Defendant Jimmy Henson fled the limited seizure.   Under these
circumstances, a § 1983 claim challenging Officer Lauderback's pursuit must be based on
substantive due process.  *See Lewis*, 523 U.S. at 842-45 & n. 7.  Fairly restated, Plaintiffs'

Complaint fails to state a claim under the Fourth Amendment, and thus Plaintiffs' claim under the Fourth Amendment must be dismissed.

**B.    Plaintiffs' Complaint fails to state a due process claim under the Fourteenth Amendment.**

In *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099 (10th Cir. 2009), the Tenth Circuit applied the intent to injure standard to a high speed chase which resulted in the death of a bystander.  Officers, who had been conducting a stakeout began to follow and then chase an individual through a town in Utah, at speeds that sometimes reached eighty (80) miles per hour.  The officers allegedly could have waited to arrest the individual at his residence for any crimes he might have committed.  However, they continued to chase him even though they were alleged to have been ordered to stop the pursuit.

Following *Lewis,* because there was "no dispute about the alleged underlying police activity resulting in Mr. Ellis's death being a high-speed pursuit," the Tenth Circuit stated it was "satisfied that [the] complaint alleged facts showing there was not time to deliberate." *Id*. at 1102.  Therefore, the court focused on the possibility of liability based on the intent to injure standard articulated in *Lewis*.  *Id*.  The court concluded that the plaintiff's complaint, including but not limited to allegations regarding the obvious danger to the public presented by the high speed chase, failed to allege facts supporting the required intent to harm.  *Id.* at 1103.

Here, it is undisputed that the injuries alleged by Plaintiffs arise out of a high-speed chase.  According to Plaintiffs, Defendant Jimmy Henson was stopped for "simple minor traffic violations," Complaint at 6, and decided to flee when Officer Lauderback went to

his patrol unit to write a traffic ticket, *id.* at 5.  Contrary to Plaintiffs' conclusory allegation, Officer Lauderback did not have time to deliberate.  Defendant Jimmy Henson's decision to flee was instantaneous and required Officer Lauderback to make a split-second judgment–in circumstances that were tense, uncertain, and rapidly evolving.  For Plaintiffs constitutional claims to be viable, they must plead, and ultimately prove, that Officer Lauderback intended to cause harm unrelated to the legitimate object of arresting Defendant Jimmy Henson.

In their Complaint, Plaintiffs do not allege that Officer Lauderback intended to harm Defendant Jimmy Henson or worsen his legal plight.  Plaintiffs do allege that "[t]he actions of the Defendant Officers as alleged in this Petition were done intentionally, maliciously, wantonly, or oppressively, and or deliberately indifferent with the intent to cause injury to the Plaintiffs…."  Complaint at 10.  However, Plaintiffs Complaint does not set forth any facts that support a reasonable inference that the individual Municipal Defendants' intent was to cause Plaintiffs' harm unrelated to the legitimate objective of arresting Defendant Jimmy Henson.

Like the individual defendant in *Lewis*, Officer Lauderback was faced with a course of lawless behavior for which the police were not to blame.  Officer Lauderback did nothing to cause Defendant Jimmy's high-speed driving in the first place, nothing to excuse his flouting of the commonly understood law enforcement authority to control traffic, and nothing (beyond a refusal to call off the chase) to encourage him to race through traffic at breakneck speed.

As noted above, Defendant Jimmy Henson's outrageous behavior was practically instantaneous, and so was Officer Lauderback's instinctive response. Assuming without conceding that prudence should have repressed Officer Lauderback's reaction, his instinct was to do his job as a law enforcement officer, not to induce Defendant Jimmy Henson's lawlessness, or to terrorize, cause harm, or kill. Prudence, that is, was subject to countervailing enforcement considerations, and assuming without conceding that Officer Lauderback exaggerated the countervailing enforcement considerations, the factual allegations set forth in Plaintiffs' Complaint do not include a reason to believe that said considerations were tainted by an improper or malicious motive on Officer Lauderback's part. Because Plaintiffs have failed to allege facts supporting the required element of intent to harm, their due process claim under the Fourteenth Amendment should be dismissed.

**C.      Plaintiffs' Complaint fails to state an equal protection claim under the Fourteenth Amendment.**

In *Estate of Ellis v. Ogden City*, 2008 WL 11424148, at *2 (D. Utah 2008), *aff'd sub nom. Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099 (10th Cir. 2009), the district court dismissed the plaintiff's equal protection claim because the plaintiff failed to allege that the plaintiff was treated differently than others similar situated. Here, neither Plaintiffs' conclusory allegations regarding "intentional disparate enforcement" and "indiscriminate creation of dangerous conditions during force used to purpose (sic) persons for minor traffic violations" nor the factual averments in their Complaint reveal how Plaintiffs were treated differently than other similarly situated. Like the district court in

*Ellis*, this Court should dismiss Plaintiffs' equal protection because Plaintiffs' Complaint fails to state a claim for equal protection under the Fourteenth Amendment.

**D.     Plaintiffs L. Shaw and M. Shaw fail to state a § 1983 claim against the Municipal Defendants.**

Section 1983 does not generally impose liability for the violation of a duty of care arising solely out of tort law.  Rather, § 1983 imposes liability only when state actors violate rights protected by the constitution or laws of the United States.  It is a "well-settled principle that a section 1983 claim must be based upon the violation of [a] plaintiff's personal rights, and not the rights of someone else."  *Archuleta v. McShan,* 897 F.2d 495, 497 (10th Cir. 1990).  Regardless of what happened to Plaintiff A. Shaw, Plaintiffs L. Shaw and M. Shaw must demonstrate that they suffered the deprivation of a constitutional right possessed by them individually.  *Id.  See also Trujillo v. Board of County Commissioners of County of Santa Fe,* 768 F.2d 1186, 1190 (10th Cir. 1985).

In their Complaint, Plaintiffs allege that "Plaintiff A. Shaw has suffered lifelong debilitating injuries as a result of Defendants' conduct.  Complaint at pg. 8, ¶ 29.  Plaintiffs L. Shaw and M. Shaw further allege that they have suffered individual damages and emotional distress and are responsible for the continued care for A. Shaw."  *Id.*  Fairly restated, Plaintiffs L. Shaw and M. Shaw do not allege that they suffered the deprivation of a constitutional right possessed by them.  Rather, their federal claims are derivative of Plaintiff A. Shaw's federal claims.

Derivative claims such as emotional distress caused by injury to another are not cognizable under § 1983.  *See Love v. Riverhead Cent. Sch. Dist.*, 823 F. Supp. 2d 193, 199

(E.D.N.Y. 2011) ("[t]he Defendants are correct that it is well-settled that a cause of action may not be asserted pursuant to Section 1983 for emotional distress, loss of society, loss of services, or any other consequent collateral injuries allegedly suffered personally by a victim's family members."). Consequently, Plaintiffs L. Shaw and M. Shaw's § 1983 claims against the Municipal Defendants fail to state a claim and should be dismissed.

**E.      The rights claimed by Plaintiffs are not clearly established.**

Assuming, arguendo, that Plaintiffs could carry the first part of their qualified immunity burden, they cannot carry the second part. While Plaintiffs allege that the individual Municipal Defendants are not entitled to qualified immunity, Complaint at 11, Plaintiffs have not provided this Court with a Supreme Court or Tenth Circuit decision on point, or clearly established weight of authority from other courts that have found the law to be as the Plaintiffs maintain. Should Plaintiffs subsequently point this Court toward a Supreme Court or Tenth Circuit decision on point, or clearly established weight of authority from other courts that have found the law to be as Plaintiffs maintain, the individual Municipal Defendants reserve the right to distinguish any such decisions or authority.

**PROPOSITION II**

**PLAINTIFFS' COMPLAINT FAILS TO STATE A
FEDERAL CLAIM AGAINST THE CITY.**

A municipality can be directly sued under § 1983 when its officers commit constitutional violations in accordance with the municipality's official policy. *Monell v. New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, liability

will not attach "where there was no underlying constitutional violation by any of [the municipality's] officers." *Graves v. Thomas,* 450 F.3d 1215, 1218 (10th Cir.2006) (citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)).

In *Ellis*, the district court dismissed the case against the defendant police officers because the plaintiff failed to state federal claims against the police officers. *Ellis,* 589 F.3d at 1104. Because the constitutional claims against the police officers were dismissed, their conduct could not provide the nexus required for municipal liability under § 1983. *Id.* at 1104-1105. "Therefore, once the claims against the officers were properly dismissed, the claims against the municipality were also properly dismissed since liability for the municipality could not attach." *Id.* at 1105.

If this Court dismisses Plaintiffs' federal claims against the individual Municipal Defendants, it should also dismiss Plaintiffs' federal claims against the City. If Plaintiffs' federal claims against the individual Municipal Defendants are dismissed, Plaintiffs cannot establish the nexus required for municipal liability under § 1983. Stated alternatively, if the federal claims against the individual Municipal Defendants are dismissed, Plaintiffs' federal claims against the City can be properly dismissed since liability against the City cannot attach.

### PROPOSITION III

### THE GTCA SHIELDS THE CITY FROM LIABILITY
### FOR THE LOSS CLAIMED BY PLAINTIFFS.

Plaintiffs' state law claims are governed by the Oklahoma Governmental Tort

Claims Act (GTCA), 51 O.S. §§ 151 through 172.  Subsection 6 of 51 O.S. § 155 states:

> The state or a political subdivision shall not be liable if a loss or claim results
> from [...] civil disobedience, riot, insurrection or rebellion or the failure to
> provide, or the method of providing, police, law enforcement or fire
> protection.

The Oklahoma Court of Civil Appeals applied this exemption in *Vaughn v. City of Tulsa*,

1999 OK CIV APP 9, 974 P.2d 188.  In *Vaughn,* a suspect was arrested, handcuffed, and

left in a police car with the engine running.  While officers were standing outside of the

car, the suspect was able to slide his hands to the front of his body, unlatch his seatbelt, and

drive the police car away in an attempt to escape.  He subsequently collided with another

vehicle, injuring its occupants.

The *Vaughn* court held, "because the facts in this case show that Jackson's attempted

escape from custody was alleged to be a result of the method of providing law enforcement

protection, § 155(6) exempts Tulsa from liability for damages suffered by an innocent third

party who is injured by the escaping arrestee. *Vaughn*, 1999 OK CIV APP 9 at ¶ 8.

Here, § 155(6) exempts the City from liability for damages suffered by Plaintiffs,

innocent third parties, who were injured by an escaping suspect. In support of their

negligence claim, Plaintiffs allege as follows:

> 13.    The Defendant officers although having seized both the vehicle and
>        Defendant Hinson did not take any further precautionary measures
>        after or while the vehicle was stopped in an active school zone with

minor children in the area including and not limited to having the driver step out of the vehicle.

\*   \*   \*

15.    Defendant Jimmy D. Hinson (hereinafter "driver") was allowed to remain in full operational control of the vehicle even though the officers believed or had reason to believe there was a likelihood that the driver would flee. Defendant Lauderback knowing or having reason to know that the driver posed a potential driving hazard left the driver the complete ability to control the vehicle he was while officers went to their patrol unit to write a traffic ticket.

16.    Defendant Hinson, as was foreseeable to any experienced officer, seized the lax atmosphere created by Defendant Lauderback to flee North bound on Berry Road through other well-known and marked school zones.

Complaint at 4-5.

These factual allegations show that Defendant Jimmy Henson's escape from Officer Lauderback's limited seizure is alleged to be the result of Officer Lauderback's method of providing law enforcement – i.e., failing to take precautionary measures such as having Defendant Jimmy Henson step out of the vehicle and leaving Defendant Jimmy Henson in control of the vehicle while Officer Lauderback went to his patrol unit to write a traffic ticket.  Because the facts in this case show that Defendant Jimmy Henson's attempted escape from Officer Lauderback's limited seizure is alleged to be a result of the method of providing law enforcement protection, § 155(6) exempts the City from liability for damages suffered by Plaintiffs, innocent third parties, who are alleged to have been injured by Defendant Jimmy Henson's attempt to escape.  Because the City is exempt from liability for damages by § 155(6), Plaintiffs' Complaint fails to state a negligence claim against the City, and thus Plaintiffs' negligence claim against the City should be dismissed.

## IV.    CONCLUSION

**WHEREFORE** the above and foregoing, the Municipal Defendants pray that this Court dismiss Plaintiffs' federal claims against the Municipal Defendants and award the Municipal Defendants all other relief deemed just and equitable.

Respectfully submitted,

by:   *s/ Rickey J. Knighton II*

Rickey J. Knighton II, OBA No. 17257
Assistant City Attorney
Jeanne M. Snider, OBA No. 119223
Assistant City Attorney
Anthony Purinton, OBA No. 34276
Assistant City Attorney
P.O. Box 370
201 West Gray
Norman, Oklahoma 73070
Telephone:  (405) 366-5423
Facsimile:  (405) 366-5425
Email:  rick.knighton@normanok.gov
Email:  jeanne.snider@normanok.gov

*Attorneys for the Municipal Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2022, I electronically transmitted the above and foregoing Motion to Dismiss to the Clerk of Court using the ECF System for filing and the following registrants:  David Batton, Esq.

s/ *Rickey J. Knighton II*
_____